FILED

2013 Jun-10  PM 02:46
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DENISE PARKER,                    )
O/B/O GERALD F. PARKER,           )
                                  )
        Plaintiff,                )
                                  )
    vs.                           )            2:12-cv-0946-LSC
                                  )
CAROLYN W. COLVIN,                )
Commissioner of Social Security,  )
                                  )
        Defendant.                )

## MEMORANDUM OPINION

## I.    Introduction

The plaintiff, Denise L. Parker, o/b/o Gerald F. Parker,[1] appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI"), period of disability, and Disability Insurance Benefits ("DIB"). Mr. Parker timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

---

[1] Mr. Parker committed suicide on June 22, 2011, by shooting himself in the chest. A death certificate and substitute party form naming his spouse, Ms. Denise Parker, were submitted to the Appeals Council on August 2, 2011. (Tr. at 161-62.)

Mr. Parker was forty-seven years old at the time of the Administrative Law Judge's ("ALJ's") decision; he completed a high school education and also served three years in the Army as a teletype operator. (Tr. at 32, 73.) His past work experiences included employment as an exercise equipment service technician and roofer. (Tr. at 75.) Mr. Parker claimed that he became disabled on June 15, 2008 due to constant pain in his lower back, shoulder, knees, and hips. (Tr. at 75-78.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Mr. Parker met the non-disability requirements for a period of disability and DIB and was insured

through the date of his decision. (Tr. at 26.) He further determined that Mr. Parker had not engaged in substantial gainful activity since the alleged onset of his disability. (*Id.*) According to the ALJ, Plaintiff's status post lumbar back surgery with degenerative joint disease and osteoarthritis of the bilateral knees were considered "severe" impairments based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments did not meet or medically equal any of the listed impairments or combination of impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 27.) The ALJ found Mr. Parker's subjective testimony to be less than credible and determined that he possessed the RFC to perform less than the full range of sedentary exertional work with the following restrictions: he must be allowed a sit/stand option in the workplace; he may not be required to sit, stand, or walk for greater than 45 minutes to one hour at a time; he cannot work around unprotected heights; he must avoid the hazards of moving machinery; and he cannot be exposed to extremes of heat, cold, humidity, or vibrations. (Tr. at 28.)

The ALJ found that Mr. Parker's impairments rendered him unable to perform any of his past relevant work, and that his transferability of job skills was not material to the determination of disability because the Medical-Vocational Rules framework supported a finding that Mr. Parker was "not disabled" regardless of whether he had

transferable skills. (Tr. at 32.) The ALJ then used the Medical-Vocational Guidelines and the testimony of a vocational expert (VE) to determine that Mr. Parker retained an RFC that allowed him to perform jobs that existed in significant numbers in the national economy. (*Id.*) Specifically, the VE testified that given Mr. Parker's age, education, work experience, and RFC to perform less than the full range of sedentary work, he should have been able to fulfill the requirements for occupations such as appointment clerk, surveillance service monitor, or switchboard operator. (Tr. at 33, 81-82.) Based on this evidence, the ALJ concluded his findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, from June 15, 2008 through the date of this decision." (*Id.*)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*,

84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.   Discussion

Plaintiff claims that the ALJ's decision should be reversed and remanded for two reasons. First, Plaintiff believes that the ALJ's pain and credibility findings are not

based on substantial evidence. (Doc. 8 at 5.) Second, Plaintiff contends that the ALJ erred in failing to develop the record for a medical source opinion (MSO). (Doc. 8 at 7.)

    A.    Pain and Credibility Findings.

Plaintiff contends that the ALJ's findings about the credibility of Mr. Parker's testimony were not based on substantial evidence. (Doc. 8 at 5-7.) Specifically, Plaintiff claims that the ALJ failed to credit Mr. Parker's subjective testimony regarding the intensity, persistence, and limiting effects of his pain. (Doc. 9 at 6-7.) Although a claimant may not receive disability benefits on the basis of his subjective testimony alone, such testimony may serve to establish a disabling impairment if it is supported by medical evidence. 42 U.S.C. § 423(d)(5)(A) (2004). *Foote v. Chater*, 67 F.3d 1553, 1560-1561 (11th Cir. 1991).

In order to establish a disability on the basis of subjective testimony of pain and other symptoms, the claimant must present evidence to support the Eleventh Circuit's pain standard. Under this standard, a plaintiff must present (1) evidence of an underlying medical condition; and (2) either a) objective medical evidence confirming the severity of the alleged symptoms or b) that the objectively determined medical condition is of such a severity that it can reasonably expected to give rise to the alleged

pain. *See* 20 C.F.R. § 404. 1529(a) (2011); *Foote,* 67 F.3d at 1560 (citing *Holt v. Sullivan,* 921 F.2d 1221, 1225 (11th Cir. 1991)). If the claimant establishes an impairment that could reasonably be expected to cause his alleged symptoms, the ALJ is obligated to evaluate the claimant's subjective complaints, including intensity and persistence of the alleged symptoms and their effect on the claimant's ability to work. *Hogard v. Sullivan*, 733 F. Supp. 1465, 1469 (M.D. Fla. 1990). The ALJ may discredit this type of pain testimony only by articulating "explicit and adequate reasoning" based on substantial evidence from the record. *Foote*, 67 F.3d at 1561; *Wilson*, 284 F.3d at 1225.

At the hearing, Mr. Parker described a work-related accident in October of 1998 that caused him severe facial trauma and bilateral fractures to his lower extremities, requiring surgery and extensive rodding in his left tibia. (Tr. at 29.) Mr. Parker testified that due to residual effects of this accident, he had to stop work in June 2008 because he experienced "constant" aching and tenderness in his lower back, left shoulder, knees, and hips. (Tr. at 75.) Also at the hearing Mr. Parker rated his pain as a 9 on a scale ranging from 1-10, indicated that strong pain medications such as Lortab and Methadone were ineffective, and declared that he could not stand or sit for more than 10-15 minutes at a time. (Tr. at 77-78.) He also testified that he underwent a

laminectomy with Dr. Sean O'Malley in 2008, but that the procedure was unsuccessful because his disks were calcified and that "there was nothing" the doctor could do. (*Id.*)

After considering this testimony, the ALJ determined that although Mr. Parker's medically determinable impairments could reasonably be expected to cause his alleged symptoms, he failed to provide support for his allegations of disabling pain with sufficient objective evidence. (Doc. 9 at 6.) Therefore, the ALJ deemed Mr. Parker's testimony regarding the intensity, persistence, and limiting effects of the symptoms was not entirely credible in that it was inconsistent with the aforementioned RFC assessment. (Tr. at 29.)

In making this decision, the ALJ compared several pieces of medical evidence in the record with Mr. Parker's pain testimony. Beginning with the 1998 accident, Mr. Parker was hospitalized from October 7 to October 12 of that year, during which time he was treated for nasal, orbital, and bilateral tibia fractures. (Tr. 212-17, 356-60.) The hardware from this procedure was removed from his legs on October 19, 1999. (Tr. 196-97, 340-42.) Next, the ALJ evaluated the notes of Dr. Sala Uddin, who treated Mr. Parker between March and September of 2008, when he sought a diagnosis for his worsening chronic back pain. (Tr. at 29.) An MRI of Mr. Parker in June 2008 showed a "right-sided disc herniation at L4-L5 superimposed upon a diffuse annular disc bulge

with likely right L5 root impingement" and "mild right foraminal stenosis at L4-5 predominately related to severe facet degeneration." (*Id.*) The EMG and nerve conduction study ordered by Dr. Uddin was significant for right-sided L5 radiculopathy. (*Id.*) When two more follow-up visits found Mr. Parker with moderate to severe tenderness in his low back and right knee, unhelped by trigger point injections, upped dosages of Lortab and Zanaflex, and a prescription back brace, Dr. Uddin referred him to Dr. Sean O'Malley for a surgical consult. (Tr. at 184.)

According to treatment notes, Dr. O'Malley performed a right-sided L4-5 hemilaminectomy, medial facetectomy, microdiskectomy, and lateral decompression on Mr. Parker on August 13, 2008. (Tr. at 250-52, 298-99, 307, 320, 422-23). Dr. O'Malley's notes did indicate that, consistent with Mr. Parker's testimony, the L4-5 disk was "heavily calcified" and could not be removed. (Tr. at 251.) However, his notes also explicitly stated that Dr. O'Malley felt he performed a "very generous lateral recess decompression" and thought there was "good decompression," contradicting Mr. Parker's insinuation that the procedure was a total failure. (*Id.*) Despite these positive connotations, Mr. Parker reported in a follow-up visit with Dr. Uddin that he had even more pain in his back and legs than he had experienced prior to surgery. (Tr. at 309.) Dr. Uddin prescribed Percocet, Zanaflax, and a Lidoderm

patch, along with suggestions of physical or occupational therapy. (Tr. at 183). There is no evidence that Mr. Parker followed this advice or that he continued to seek treatment with Dr. Uddin or Dr. O'Malley after September 2008.

The ALJ next considered the physical examination of Mr. Parker by Dr. Raveendran Meleth in November 2008. (Tr. at 30-31.) During this visit Mr. Parker rated his pain as a 9 on a 10 point scale, but Dr. Meleth noted to the contrary that he was able to walk independently, remove his socks, shoes, and pants without help, sit comfortably, and squat 30 degrees. (Tr. at 458.) Mr. Parker was using crutches during this visit, but stated to Dr. Meleth that he did not need help with his daily chores; he then complained of not having insurance or adequate financial resources for pain medication. (Tr. at 31.) Dr. Meleth's impression upon examining Mr. Parker was chronic low back pain due to degenerative joint disease with limited range of motion, moderately severe osteoarthritis of the right knee, and mild osteoarthritis of the left knee. (*Id.*)

Mr. Parker's next medical evaluation was in December 2008, when a State agency consultant administered an RFC assessment on Mr. Parker. (Tr. at 31.) The consultant found Mr. Parker's complaints to be credible, but, contrary to Mr. Parker's own claim, predicted that he would not remain at his then-current level of low

functionality for a consecutive twelve month period. The consultant characterized Mr.
Parker's RFC as at a "light exertional" level. (Tr. at 31.)

The next piece of medical evidence is dated over a year later, in January 2010,
when Mr. Parker saw Dr. Anju Garg for lumbar spine pain which he rated at a level of
"8-10" on a 10 point scale. (Tr. at 461.) At this time Mr. Parker told Dr. Garg that he
was not taking pain medications because he could not afford them, but indicated that
he wanted to keep taking over-the-counter pain and anti-inflammatory medications
because he was afraid that prescription medications might affect his driving. (*Id.*) A few
months later on March 4, 2010, Mr. Parker sought medical attention in the Cooper
Green Hospital Emergency Room, where he complained to Dr. Willard Mosier of
constant, throbbing back pain that had worsened in the previous two months, along
with radiation and numbness into his legs. (Tr. at 464.) A physical examination showed
tenderness with a limited range of motion and pain with movement, while X-rays
showed mild degenerative disc disease at L4-5 and minimal degenerative changes at L3-
4. (Tr. at 468.) Dr. Mosier diagnosed Mr. Parker with lumbar degenerative joint
disease and prescribed steroid analgesics and muscle relaxants. (Tr. at 466.)

In his determination that Mr. Parker's pain testimony was not credible, the ALJ
specifically focused on the gap between September 2008 and January 2010, where

despite his complaints of constant disabling pain, there is no evidence that Mr. Parker sought any medical care for his pain for over a year. (Tr. at 32.) Plaintiff claims that despite the intermittent nature of his visits to various doctors, it would have been unreasonable for Mr. Parker to see so many doctors over such a long period if his goal was not to obtain relief from intolerable pain. (Doc. 8 at 7.) Nonetheless, the ALJ found that the lack of medical evidence during such an extended period contradicts Mr. Parker's claim that his impairments limited him for twelve consecutive months, a limitation which is required to show disability under the Social Security Act. (*Id*.)

Plaintiff also argues that Mr. Parker's lapse in medical care was due to his lack of insurance and financial means, and furthermore that a lack of success in previous treatments may have discouraged him from seeking more. (Doc. 8 at 7.) Considering this rationale, the ALJ did acknowledge that Mr. Parker's lack of insurance could possibly influence his decision to not seek medical attention in 2009. (Tr. at 32.) However, the ALJ points to the medical evidence from January and March 2010, when Mr. Parker did seek treatment from medical professionals but chose to continue over-the-counter instead of prescription medications, a choice that seems clearly inconsistent with Mr. Parker's previous claims of severe, disabling pain. (Tr. at 32.) The ALJ reasoned that if Mr. Parker was experiencing the intense pain he alleged, it

would have been logical for him to have sought the appropriate medical attention and to have accepted prescription-level medications to ease the pain. (Tr. at 32.)

The ALJ also identified aspects of the objective medical evidence which strikes against Mr. Parker's subjective allegations of pain. Specifically, the March 2010 x-rays of Mr. Parker's back only revealed mild to minimal degenerative disc and joint disease, indicating significant improvements from Mr. Parker's pre-surgery diagnosis and contradicting his complaints at the time that his pain was unbearable. (Tr. At 31.) Additionally, the ALJ noted the disparity between Mr. Parker's assertion that his 2008 surgery with Dr. O'Malley was abysmal and the doctor's own note that the surgery was successful, resulting in "good decompression." (Tr. at 251.) Because hard medical evidence from the 2010 x-rays and post-surgery physicians' notes contradicted Mr. Parker's assertions that his pain after the 2008 surgery was at the intensity alleged in his claim, the ALJ determined that his pain testimony was less than credible. (Tr. at 33.)

The AlJ's reasons for discrediting Mr. Parker's subjective statements were appropriate and in accord with applicable law. *See, e.g., Quick v. Comm'r of Social Security*, 403 Fed. App'x, 381, 384 (11th Cir. 2010) (holding that if plaintiff was experiencing extreme pain he could be reasonably expected to complain about that pain

to his doctor during the relevant period); *Vesy v. Astrue*, 353 Fed. App'x, 219, 222 (11th Cir. 2009) (ALJ's finding that claimant's testimony was not credible was substantially supported by disparity between doctors' notes and pain alleged by claimant). Furthermore, it is a plaintiff's burden to prove by sufficient evidence that she has a qualifying disability under the Act and that she has an inability to perform past work. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Mr. Parker failed to meet this burden. Therefore, the ALJ acted appropriately in determining that Mr. Parker's subjective testimony was less than credible, and his finding that Mr. Parker was not disabled under the Act was supported by substantial evidence.

B.     Failure to Develop the Record for a Medical Source Opinion

Plaintiff also claims that the ALJ erred by failing to further develop the record for an MSO. (Doc. 8 at 7.) However, there must be a showing of prejudice before it is found that the claimant's right to due process has been violated such that the case should be remanded for further development of the record; the claimant bears this burden as well. *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997). Therefore it is the plaintiff's responsibility to show prejudice by a lack of sufficient evidence. *Id*.

The ALJ has a basic duty to develop a "full and fair record" before making a determination about disability. *Ellison*, 355 F.3d at 1276. This responsibility entails

developing a claimant's medical history for at least 12 months prior to the month in which the application was filed; only when the evidence on record is inadequate to support a disability determination will the ALJ need additional information. 20 C.F.R. § 416.912(d), 416.912(e) (2012). As already noted, the plaintiff rather than the ALJ has the burden of providing this type of information to support a finding of disability simply because his personal knowledge of his own medical conditions makes him a better source. *Id.; See also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Consequently, the ALJ is under no express duty to find an MSO or an RFC assessment in the record to make RFC findings, or to order consultative examinations when the record already contains sufficient evidence.

Plaintiff failed to show that the record housed insufficient evidence for the ALJ to make a disability determination, and therefore failed to show prejudice regarding the development of the record. Plaintiff argues that because there was no MSO from a treating or evaluating physician for the ALJ's RFC assessment, the RFC findings did not properly comply with the specificity requirements of SSR 96-5p. (Doc. 9 at 15.) Plaintiff urges the ALJ to require an MSO so that he may base his RFC assessment on a valid medical opinion. (Doc. 8 at 6-7). However, even the Plaintiff concedes that neither an MSO nor an RFC assessment is necessary for the ALJ to make legitimate

RFC findings. (Doc. 8 at 7.)

The Social Security Act instills in the Commissioner the authority to make disability determinations and to regulate the rules of the Act; through this power the Commissioner has delegated the responsibility of disability determination to the ALJ when a claimant appears at the hearing level. 42 U.S.C. § 405(a)-(b). 20 C.F.R. § 404.929. The regulations further specify that issues affecting a claimant's RFC and his disability status are to be weighed by the ALJ in a legal administrative context. 20 C.F.R. § 404.1527(d). This means that the ALJ will evaluate the entire record, using medical opinions and other evidence to make a dispositive administrative finding about the claimant's disability status. *Id.* Plaintiff's claim that the ALJ needed an MSO to make a proper RFC finding is clearly a confusion of the two assessments, and should is therefore unfounded.

A claimant's RFC is one of the most important factors an ALJ considers when determining disability, and he assesses it based "on all of the relevant medical evidence and other evidence." 20 C.F.R. § 404.1545(a)(3). While MSOs are often present in this information, the RFC is the adjudicator's total evaluation of the work-related tasks a claimant can perform. S.S.R. 96-5p, 1996 WL 374183. Therefore, an RFC is not a medical assessment, and the ALJ does not need an MSO to determine a claimant's

RFC as long as he has adequately evaluated sufficient evidence in the record to make his determination. 20 C.F.R. § 404.1545(a)-(b).

Here, the record provided the ALJ with pre- and post-surgery medical notes from all Mr. Parker's physicians on the state of his condition since the 1998 accident. Additionally, the ALJ asked many probing questions during his interview with Mr. Parker in order to thoroughly evaluate his abilities, functional limitations, and pain level. (Tr. at 75-79.) These are clear indications that the record was full and adequate, and that there were no evidentiary gaps to suggest prejudice against Mr. Parker with regard to the ALJ's RFC assessment. *See Graham*, 129 F.3d at 1423 (recognizing that an adequate record coupled with the ALJ's interview with the claimant was sufficient for the ALJ to evaluate the claimant's impairments and functional abilities). Therefore, the ALJ relied on substantial evidence in the record to make an informed decision and had no reason to further develop the record by obtaining another medical consult or MSO.

## IV.    Conclusion

Upon review of the administrative record, and considering all of Plaintiff's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this <u>10th</u> day of <u>June 2013</u>.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

[170956]